Manayunk and Roxborough Boarding and Livery Stable Company, Appellant, *v.* The Union Traction Company.

*Street railways—Contributory negligence—Question for jury.*

Where the evidence of the defendant's negligence is sufficient to carry the case to the jury, and where the fact of the plaintiff's contributory negligence is left at all in doubt, the case is for the jury.

The plaintiff's wagon was struck by a rapidly moving trolley car at the intersection of two streets; the evidence of the plaintiff was somewhat improbable, yet as the case stood, when the plaintiff rested, the statements as to the care exercised in stopping, looking and listening, were not so inconsistent with mathematical and optical laws as to make their truth impossible. *Held,* that the case should have been sent to the jury on the question of contributory negligence.

Argued Oct. 22, 1897. Appeal, No. 126, Oct. T., 1897, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1896, No. 511, entering nonsuit. Before RICE, P. S., WICKHAM, BEAVER, REEDER, ORLADY and PORTER, JJ. Reversed.

Trespass. Before FINLETTER, P. J.

This was an action of trespass to recover damages resulting

from a collision between plaintiff's carriage and horses and defendant's trolley car, in which it was alleged that the plaintiff lost $392.08 in the repairing of the carriage and harness and the loss of the value of the horses.

It appears from the evidence that the accident occurred at the junction of Second and Diamond streets. Mancel Tweed, the driver, testified that on the day in question, he was driving up Diamond street on the north side of the street. As he neared the crossing he brought his horses to a stop and listened for the cars. He stopped his horses just as their heads reached the east foot crossing, which was about fifteen feet from the east track, and not hearing any warning he proceeded to cross the street. He testified that at the place where he stopped he could not see up Second street because of a factory at the northeast corner of Second and Diamond streets, and that you could not see up Second street until your horses' heads were practically upon the track. That his custom was to stop at a foot crossing so as not to interfere with public travel, and that to stop at any other point at this crossing would be to leave his horses and carriage upon the foot crossing used by the public; that he had driven over this street before and that the defendant had been in the habit of stopping its cars on the north side of Diamond street before crossing Diamond street. That he was driving cautiously, and that he could not have driven nearer the track without blocking up the footways, and in no event could he have seen up Second street until his horses were upon the defendant's track.

Garret McMaster, the manager of the appellant company, was called, who testified that he took a similar pair of horses and carriage to Second and Diamond streets to ascertain the truth of this driver's statement and drove up on the north side of Diamond street to Second until he could see some thirty or forty feet up the street, stopped the horses, got out and measured the distance between his horses' heads and the east track and found that they were within three feet of the east track; that to enable the driver to see all the way up the street the horses would have to be upon the track. That the distance from the heads of the horses to the place where the driver sits was fifteen feet six inches; that the building at the northeast corner obstructed the view of the driver so that the horses had

to be driven within a few feet of the track before he could see an approaching car.

A number of citizens were called who testified that they saw the accident, saw the car coming at an unusual rate of speed, and that it did not slow up on reaching Diamond street until it struck the carriage; that no bell or other warning was given by the defendant, and that the horses and carriage were taken some twenty-five or thirty feet before the car was stopped, and then stopped only by the bodies of the horses being under the wheels.

The learned trial judge entered a nonsuit on the ground that the driver of the plaintiffs was guilty of contributory negligence, which the court refused to take off, on motion.

Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit.

*W. Horace Hepburn*, for appellant.—The sole question in this case is, did the plaintiff's driver do that which an ordinarily prudent man would do under the circumstances? There was sufficient evidence that he did, to require that the case should be submitted to the jury: Downey v. Traction Co., 161 Pa. 131; Greenfield v. Railway Co., 178 Pa. 194; Cookson v. R. R. Co., 179 Pa. 184.

*Thomas Leaming*, with him *Dallas Sanders*, for appellee.— The duty to look and listen—if not to stop—before crossing an electric street railway track, has been laid down in innumerable cases: Carson v. Railway Co., 147 Pa. 219; Ehrisman v. Railway Co., 150 Pa. 180; Buzby v. Traction Co., 126 Pa. 559; Wheelahan v. Traction Co., 150 Pa. 187; Omslaer v. Traction Co., 168 Pa. 519; Urias v. Railroad Co., 152 Pa. 326; Gangawer v. Railroad Co., 168 Pa. 265.

Finally, our decisions have lately laid down the very sensible proposition that a man must not only look before crossing the street, but must continue to look whilst doing so: Rauscher v. Traction Co., 176 Pa. 349; Nugent v. Traction Co., 181 Pa. 160.

OPINION BY WICKHAM, J., March 21, 1898:

On January 5, 1896, two horses and a coupé, belonging to

the plaintiff, were being driven west, on the north side of Diamond street, in the city of Philadelphia.   A number of persons were in the vehicle, and the driver and a companion occupied the elevated seat in front.   So far as the evidence goes, the coupé was of the kind in common use, and the horses easily controlled and accustomed to the electric cars.

When the carriage approached the intersection of Diamond and Second streets, the driver, who, according to his own statement, had been familiar with the locality for five years, says that he stopped, looked, and listened in order to ascertain if a car were approaching, and neither seeing nor hearing anything to warn him, drove on until his horses were on the railway track.   He then, for the first time, saw a rapidly approaching car only about fifteen feet distant.   It was too late to avoid the accident, which took place the next instant.   The evidence of the defendant's negligence was sufficient to carry the case to the jury, but it is contended that the plaintiff, on the showing of its own witnesses, was guilty of such contributory negligence as to preclude a recovery.   This is the only question for our consideration.

The inquiry naturally suggests itself, how the driver could have failed to see the coming car had he looked and listened at the right place.   The car approached from the north on Second street, and the vehicle was on the north side of Diamond street. A brick building stands at the northeast corner of the two ways and extends at least out to the street line.   Instead of driving out on Second street far enough to obtain a view north, the driver stopped his horses back on Diamond street, east of the footway crossing the latter.   So far as seeing was concerned he might as well have stopped many feet farther back.   His vision could not pierce the brick building.   From the east line of Second street to the nearest rail of the street car track it was twenty-six feet; that is, twelve feet of sidewalk and fourteen feet of gutter and driveway.   At first thought it would seem that had he, as he drove out on Second street, merely glanced to the north, he could not have helped observing the coming car, and that he might then have easily stopped his horses in time to prevent the accident.

One of the excuses he offers for not stopping is, that to have done so would have left the carriage standing on the foot cross-

ing. His theory appears to be, that to save his own life and the lives of the people in the coupé, as well as to prevent the destruction of his employer's property, he had no legal right to obstruct the footwalk for even a few seconds. This absurd proposition needs no refutation, and if there were no other explanation, we would have to agree that the nonsuit was properly entered. But the driver also testified that it was impossible to obtain a view, north on Second street, far enough to see and escape the car, without driving so far out that his horses would be on the railway track, or at least so near thereto as to be in danger from the passing car, which projected eighteen inches beyond the rail on each side. In this statement he was to some extent corroborated.

Had it appeared from the evidence that Diamond street crosses Second street at a right angle, and that Second street extends, without bends or crooks, at a similar angle for any distance north, it is very difficult to understand why a look northward would not have revealed the car to the driver, after he had passed the building line, on Second street. But as to these important facts the evidence is silent. If the draft used by defendant's counsel in cross-examination, and the contents whereof are partially brought before us through the answers of witnesses, had gone in evidence, it might, perhaps, have exhibited these things, but an inspection of the formal bill of exceptions, which is indorsed by the defendant's counsel, " No objections," shows that the statement originally contained in the stenographer's notes, that the draft and certain photographs had been offered in evidence, was stricken out by the trial judge when settling the bill. The draft is thus excluded from our consideration, except to the extent that the matters it would have proved have crept into the testimony. Moreover, it is not attached to the record as an exhibit or otherwise, is not among the papers sent up with the record, and therefore we could not, if it were allowable to examine it, know what it established in regard to the manner in which the streets intersect each other, and their particular courses, at and near the place of the accident. For aught we know from the evidence, or judicially, Second and Diamond streets may cross at such an angle as to corroborate rather than to contradict the driver's testimony, and where the fact of the plaintiff's contributory negligence is left at all in doubt, the case

is for the jury: Greenfield v. Harrisburg, etc., Ry., 178 Pa. 194. While some of the statements of the plaintiff's material witnesses may seem rather improbable, yet as the case stood when the plaintiff rested, they were not so inconsistent with mathematical and optical laws as to make their truth impossible.

Judgment reversed and procedendo awarded.